# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Nelson Auto Center, Inc.,                  Civil No. 17-5577 (DWF/LIB)

          Plaintiff,

v.                                                **MEMORANDUM OPINION AND ORDER**

Multimedia Holdings Corporation
d/b/a KARE-TV and d/b/a KARE 11; and
Tegna, Inc.,

          Defendants.

---

Stephen F. Rufer, Esq., and Kendra Elizabeth Olson, Esq., Pemberton, Sorlie, Rufer, Kershner, P.L.L.P., counsel for Plaintiff.

Steven J. Wells, Esq., and Angela Porter, Esq., Dorsey & Whitney LLP, counsel for Defendants.

---

# INTRODUCTION

Plaintiff Nelson Auto Center, Inc. ("Plaintiff" or "Nelson Auto"), sued Defendants Multimedia Holdings Corporation, d/b/a KARE-TV and d/b/a KARE 11, and TEGNA, Inc. (collectively, "Defendants" or "KARE 11"), alleging defamation based on a story that KARE 11 published in July 2017. This matter is before the Court on Defendants' motion to dismiss. For the reasons discussed below, the Court grants Defendants' motion.

## BACKGROUND

In early 2017, KARE 11 investigated a potential overbilling scheme, which involved the former fleet manager at Nelson Auto overcharging Minnesota police departments for police vehicles. (Doc. No. 13 ("Am. Compl.") ¶ 4.) In April 2017, KARE 11 informed Nelson Auto's principals, Brent and Laurel Nelson (the "Nelsons"), of the investigation. (Am. Compl. ¶¶ 1, 11.) On July 24, 2017, the State of Minnesota filed criminal charges against Gerald Worner, the former fleet manager at Nelson Auto, charging him with five counts of theft by swindle. (Doc. No. 19 ("Porter Decl.") ¶ 1, Ex. A, at 1-2.)[1]

Also on July 24, 2017, KARE 11 published a story to its website and its Facebook page with the headline "KARE 11 Investigates: Criminal Charges Filed Against State Vendor." (Am. Compl. ¶¶ 10, 16.) The Facebook post stated: "A state vendor is now facing criminal swindling charges after a KARE 11 investigation exposed law enforcement agencies across Minnesota have been getting ripped off on their squad car purchases for years." (Doc. No. 20 ("Eckert Decl.") ¶ 1, Ex. B.) The sub-headline of the story read: "The Otter Tail County Attorney's Office has filed a five-count theft by swindle indictment against the former Fleet Manager at Nelson Auto Center in Fergus Falls." (*Id.*)

---

[1]   The Court may consider the public record related to Worner's criminal case as it is necessarily embraced by the Amended Complaint. *See Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

A few days after KARE 11 published the story, the Nelsons notified KARE 11 that they considered the statements in the stories to be false and requested that KARE 11 issue corrections to the stories. (Am. Compl. ¶ 15.) KARE 11 changed the headline to state that a "former manager" at Nelson Auto was facing criminal charges and added language to the bottom of the story: "CORRECTION: An earlier version of this report incorrectly stated that charges had been filed against a state vendor. It has been updated to reflect that the charges involve the state vendor's former manager – not the dealership." (*Id.*; Eckert Decl. ¶ 2, Ex. C.[2]) Nelson Auto alleges that KARE 11 never corrected the Facebook post about the story. (Am. Compl. ¶¶ 16, 17.)

In November 2017, a story published on KARE 11's website referenced the July story: "RELATED: Charges filed (http://www.kare11.com/news/investigations/kare-11-investigates-criminal-charges-filed-against-state-vendor/459264740). (*Id.* ¶ 18.) On December 27, 2017, KARE 11 published a recap of its investigation. (*Id.* ¶¶ 20-22.) Nelson Auto alleges that the December 27, 2017, story contains numerous misleading statements implying that Nelson Auto "ignored warnings" regarding the scheme. (*Id.* ¶¶ 20-21.) The December 27, 2017, story notes that the "dealership owners [were] not charged" in relation to the scheme. (*Id.* ¶ 22.) Nelson Auto alleges that the July, November, and December stories "created a controversy" and that KARE 11 "sought to

---

[2] Exhibit C to the Eckert Declaration is the corrected KARE 11 story. Because it is embraced by Plaintiff's Amended Complaint, the Court will consider it in deciding Defendants' motion to dismiss. *See Porous Media Corp.*, 186 F.3d at 1079.

drag Nelson Auto into the spotlight, despite Nelson Auto's consistent and ongoing efforts to correct the billing issues as soon as they were brought to their attention." (*Id.* ¶ 23.)

Plaintiff first filed this defamation lawsuit against Defendant on December 28, 2017. On February 9, 2018, Plaintiff filed its First Amended Complaint, alleging that KARE 11's stories falsely claimed or implied that criminal charges were being brought against Nelson Auto. (Am. Compl. ¶¶ 20-26.) Defendants move to dismiss the claim.

## DISCUSSION

### I. Legal Standard

In deciding a motion to dismiss under Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court deciding a motion to dismiss may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint. *See Porous Media Corp.*, 186 F.3d at 1079.

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative

4

level." *Id.* at 555. As the Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

## II. Corporations as Public Figures

To survive a motion to dismiss on its defamation claim, Nelson Auto must plead: (1) a false and defamatory statement; (2) publication of that statement to a third party; and (3) harm to Nelson Auto's reputation. *Weinberger v. Maplewood Review*, 668 N.W.2d 667, 673 (Minn. 2003). Additionally, when a party claiming defamation is a public figure, then that party must not only prove that the statement is false, but also that it was made with actual malice. *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964); *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393 (8th Cir. 1997) (applying Minnesota law). KARE 11 argues that under Minnesota law, all corporations are public figures for purposes of defamation claims. KARE 11 argues therefore that Nelson Auto is required to plead actual malice as part of its prima facie defamation claim. Nelson Auto disagrees.

Nelson Auto argues that Minnesota law "distinguishes between highly regulated industries . . . and less regulated industries, leaving space for small, family owned businesses to keep the protection afforded by private figure status, while allowing larger corporations, more accountable to the public through regulations, to be limited purpose public figures." (Doc. No. 23 ("Pl.'s Opp.") at 3.) The Court disagrees. Where, as here,

5

a corporation brings a claim for defamation against a media entity, the corporation must allege actual malice. *Nw. Airlines*, 111 F.3d at 1393; *Jadwin v. Minneapolis Star & Tribune Co.*, 367 N.W.2d 476, 487 (Minn. 1985) ("The 'public figure' standards set out in *Gertz* are designed to ascertain whether a person, through his activities, has lost his claim to his private life. It makes no sense to apply those standards to a corporation, which, regardless of its activities, never has a private life to lose.").

Contrary to Nelson Auto's argument, *Northwest Airlines* and *Jadwin* do not carve out exceptions for corporations in less heavily regulated industries. (*See* Pl.'s Opp. at 4-5.) Although the *Northwest Airlines* and *Jadwin* courts discussed industry regulation, neither predicated a corporation's public-figure status on its level of regulation. Instead, the *Northwest Airlines* court held that "Minnesota law considers a corporation a public figure and requires it to show that a statement was made with actual malice to establish a defamation claim." 111 F.3d at 1393. In *Porous Media*, the Eighth Circuit affirmed this blanket holding. 186 F.3d at 1116. Moreover, the *Jadwin* court specifically held that "corporate plaintiffs in defamation actions must prove actual malice by media defendants when the defendants establish that the defamatory material concerns matters of legitimate public interest in the geographic area in which the defamatory material is published." *Jadwin*, 367 N.W.2d at 487-88. Finally, Nelson Auto's reliance on *Chafoulias v. Peterson*, is misplaced because in that case, the Minnesota Supreme Court considered whether an individual plaintiff could be considered a limited purpose public figure for purposes of his defamation claim. 668 N.W.2d 642, 648 (Minn. 2003). The *Chafoulias* court was not faced with a corporate plaintiff at all. Neither the Eighth Circuit nor the

6

Minnesota Supreme Court has carved out an exception from the actual malice standard for less heavily regulated corporations. The Court declines to make such an exception here.

Nelson Auto also argues that KARE 11's reporting did not concern "matters of legitimate public interest." *See Jadwin*, 367 N.W.2d at 487-88. The Court disagrees. KARE 11's reporting focused on an overbilling scheme involving the expenditure of public funds through a public procurement process. *See* Minn. Stat. Ch. 16C ("State Procurement"). The scheme resulted in a total known loss of taxpayer dollars in the amount of $379,722 between October 2014 and March 2017. (Porter Decl. ¶ 1, Ex. A.) The Court concludes that KARE 11's reporting centered on a matter of legitimate public interest.

Nelson Auto is incorporated in Minnesota, conducts much of its business in and with the State of Minnesota, is subject to Minnesota regulations,[3] and brings its claim using the substantive libel law of Minnesota. *See Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, 1116 (8th Cir. 1999) (identifying the foregoing characteristics in reaching the conclusion that Porous Media, as a corporation, is a public figure). Based on the foregoing, the Court concludes that Plaintiff is a public figure for purposes of its defamation claim and that it must plead actual malice to state an actionable defamation claim.

---

[3]  Minn. Stat. §§ 325F.662-666 (automobile dealer licensing regulations); Minn. Stat. Chs. 168 and 168A (vehicle licensing and registration requirements); 16C (state procurement requirements).

**III.     Actual Malice**

Nelson Auto argues it has adequately pleaded facts showing actual malice.  (Pl.'s Opp. at 9.)  Statements are made with actual malice if they are made:  (1) "with knowledge that the statements were false," or (2) "with reckless disregard of whether they were true or false." *Nw. Airlines*, 111 F.3d at 1395.  Reckless disregard requires a showing that the speaker "entertained serious doubts as to the truth of the publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968).  "Moreover, 'actual malice' does not mean that the defendant acted with ill will or spite." *Chafoulias*, 668 N.W.2d at 654.

Nelson Auto identifies four specific allegations in its Amended Complaint that it claims constitute actual malice:

> 12.     KARE 11's investigation included extensive information related to the criminal charges that would eventually be brought against the Nelson Auto employee responsible for the over-billing issues and KARE 11 was aware that no criminal charges were being considered against Laurel Nelson, Brent Nelson, or Nelson Auto.
>
> * * *
>
> 14.     Through the investigation, KARE 11 had knowledge that the defamatory statements detailed above were false, but KARE 11 recklessly disregarded the truth and published the defamatory statements anyway.
>
> 15.     On or about July 28, 2017, Brent and Laurel Nelson sent correspondence to KARE 11 informing KARE 11 that its published story was false because it claimed Nelson Auto Center, Inc. was being charged criminally.  KARE 11 responded by correcting the story . . . .
>
> * * *
>
> 18.     An early November 2017 story published by KARE 11 on its website contained a reference to KARE 11's July 24 story . . . despite the fact [KARE 11] had previously acknowledged that this version of the story was false.

8

(Pl.'s Opp. at 12-13; Am. Compl. ¶¶ 12, 14-15, 18.)  In short, Nelson Auto alleges that KARE 11 knew that Nelson Auto was not being charged with a crime, but nonetheless stated that it was.

First, the Court considers the parties' dispute over the word "vendor" in KARE 11's stories.  Nelson Auto argues that KARE 11's use of the word "vendor" implied that Nelson Auto, and not Mr. Worner, had been charged with a crime.  KARE 11 responds that "vendor" in common parlance could refer to Mr. Worner, and is therefore not a false statement.  KARE 11 argues that, "[a]t most, the word 'vendor' could be considered legally imprecise," but does not constitute actual malice.  (Doc. No. 18 at 11 (citing *Jadwin v. Minneapolis Star & Tribune Co.*, 390 N.W.2d 437, 442 n.2 (Minn. Ct. App. 1986) ("Courts allow reporters some leeway in accuracy when describing legal issues to the public.").)  In the body of the July 24, 2017 article, KARE 11 specifies that the swindling charges were filed against Mr. Worner, not Nelson Auto.  There are no allegations in the Amended Complaint, nor any facts in the materials embraced by the Amended Complaint, that suggest that KARE 11 believed its use of the word "vendor" was intentionally or recklessly false.  Even making all reasonable inferences in favor of Nelson Auto, none of the allegations plausibly show that KARE 11 acted with actual malice in using the word "vendor" in its reporting headlines.

Second, the Court considers whether Nelson Auto's allegations regarding KARE 11's Facebook post or hyperlink in the November 2017 story show actual malice.  Nelson Auto alleges that although KARE 11 stated it would correct its reporting, it never

deleted or corrected the Facebook post. (Am. Compl. ¶¶ 16-17.) Nelson Auto further alleges that the November 2017 story contained a hyperlink to the July 2017 story that KARE 11 already acknowledged as inaccurate. (*Id.* ¶ 18.) Nelson Auto argues that these facts show that KARE 11 posted the stories with knowledge that they were false. The Court disagrees. The Facebook post expressly states that the "former Fleet Manager" at Nelson Auto is facing swindling charges. (Eckert Decl. ¶ 1, Ex. B.) The Facebook post is therefore accurate and does not show KARE 11 acted with actual malice. Regarding the hyperlink in the November 2017 story, Nelson Auto's allegations show nothing more than oversight on KARE 11's part, which does not constitute actual malice. Nowhere does Nelson Auto plausibly allege that KARE 11 knew the web address was false or recklessly disregarded its truth or falsity in posting the hyperlink in the November 2017 story.

The Court concludes that Nelson Auto has failed to adequately allege facts that would support a finding of actual malice, and Nelson Auto's defamation claim therefore fails.

## ORDER

Based on the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (Doc. No. [15]) is **GRANTED** and Plaintiff's Amended Complaint (Doc. No [13]) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 12, 2018              s/Donovan W. Frank
                                       DONOVAN W. FRANK
                                       United States District Judge