United States Court of Appeals
For the Eighth Circuit

_____

No. 18-3254
_____

Nelson Auto Center, Inc.

*Plaintiff - Appellant*

v.

Multimedia Holdings Corporation, doing business as
KARE-TV and KARE 11; Tegna, Inc.

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 17, 2019
Filed: March 5, 2020

_____

Before LOKEN, SHEPHERD, and STRAS, Circuit Judges.

_____

LOKEN, Circuit Judge.

   Nelson Auto Center, Inc. ("Nelson Auto") is a South Dakota corporation. Its principal place of business is a car dealership in Fergus Falls, Minnesota. Nelson Auto brought this diversity action against Multimedia Holdings Corporation, doing business as KARE-TV and KARE 11, and Tenga, Inc. (collectively "KARE 11"). Nelson Auto alleges that KARE 11, a Minneapolis-St. Paul news provider, published

false and defamatory statements regarding a criminal complaint filed by the State of Minnesota in Otter Tail County District Court charging Gerald Worner, Nelson Auto's former Fleet Manager, with five counts of theft by swindle. The district court granted KARE 11's Rule 12(b)(6) motion to dismiss, concluding (i) Nelson Auto is a "limited purpose public figure" under Minnesota law, and (ii) Nelson Auto failed to plausibly allege that KARE 11 acted with actual malice in publishing any of the statements. Nelson Auto appeals. Reviewing *de novo*, we affirm.

## I. Background

Nelson Auto's Amended Complaint alleges that, in December 2016, KARE 11 began investigating whether Nelson Auto was overcharging Minnesota police departments for purchased vehicles. KARE 11 did not inform Nelson Auto's owners, Brent and Laurel Nelson, of the investigation until April 2017. The Amended Complaint alleges that, on July 24:

> KARE 11 published a story to its website with a headline reading "KARE 11 Investigates: Double-billing the badge, Criminal charges filed against state vendor[.]" The publication went on to say, falsely, "A state vendor is now facing criminal swindling charges[.]" The state vendor referenced in the story was Nelson Auto Center, Inc.

The Amended Complaint further alleges the statements were "false and defamatory because Nelson Auto Center, Inc. has never been charged with a crime," and "KARE 11 was aware that no criminal charges were being considered" against Nelson Auto or the Nelsons. On July 28, the Nelsons complained to KARE 11 that the story falsely claimed Nelson Auto was being charged criminally. In response, KARE 11 corrected the story on its website to state that a "former employee" of Nelson Auto was being charged criminally. However, KARE 11 did not delete or correct its July 24 Facebook post of the same story. In November 2017, KARE 11 published a story on its website which included a reference and hyperlink to the uncorrected July 24

-2-

story falsely stating that Nelson Auto was the subject of criminal charges, "despite being on notice from plaintiff that it was false and defamatory." The Amended Complaint alleges that KARE 11 published false and misleading statements "with reckless disregard for the truth, with actual malice, and in bad faith."

KARE 11 moved to dismiss the Amended Complaint for failure to state a claim of defamation on which relief can be granted. In support, KARE 11 submitted copies of the State of Minnesota criminal complaint filed against Worner on July 24, 2017, a "screenshot" of KARE 11's July 24 Facebook post of the story, and a copy of the corrected version of the July 24 website story. The one-page screenshot begins, "A state vendor is now facing criminal swindling charges after a KARE 11 investigation . . . ." Below is a picture of Nelson Auto's dealership and car lot; the caption reads, "KARE 11 Investigates: Criminal charges filed against state vendor." Below that, in smaller print, it states: "The Otter Tail County Attorney's Office has filed a five-count theft by swindle indictment against the former Fleet Manager at Nelson Auto Center in Fergus Falls." The longer corrected version of the website story states at the end:

> CORRECTION: An earlier version of this report incorrectly stated that charges had been filed against a state vendor. It has been updated to reflect that the charges involve the state vendor's former manager--not the dealership.

The district court granted the motion to dismiss, concluding (i) under Minnesota law, all corporations are public figures and must prove actual malice to recover on a claim of defamation; (ii) there are no allegations in the Amended Complaint that KARE 11's use of the imprecise word "vendor" in the July 24 story was intentionally or recklessly false; and (iii) the November 2017 hyperlink to the uncorrected July 24 story "show[s] nothing more than oversight on KARE 11's part, which does not constitute actual malice."

-3-

We review the grant of a motion to dismiss *de novo* taking the facts alleged in the Amended Complaint to be true. Elmore v. Harbor Freight Tools USA, Inc., 844 F.3d 764, 766 (8th Cir. 2016), cert. denied, 138 S. Ct. 316 (2017). To survive a motion to dismiss for failure to state a claim, the Amended Complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). We ignore materials outside the pleadings but may consider materials that are part of the public record or do not contradict the complaint, and materials that are "necessarily embraced by the pleadings." Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (quotation omitted). Here, Nelson Auto does not challenge the district court's decision to consider the criminal complaint against Worner, the July 24 Facebook screenshot, and the corrected version of the July 24 story on KARE 11's website. The criminal complaint is a matter of public record and all three materials are necessarily embraced by Nelson Auto's Amended Complaint.

## II. The Public Figure Issue

The First Amendment prohibits public officials or public figures from recovering damages for defamatory falsehoods concerning issues of public interest and concern unless they prove "that the statement was made with 'actual malice' -- that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 279-80 (1964); see Curtis Publ'g Co. v. Butts, 388 U.S. 130, 164 (1967) (Warren, C.J., concurring) (extending the rule in New York Times to public figures, that is, persons "intimately involved in the resolution of important public questions or, by reason of their fame, shape events in areas of concern to society at large"). Thus, if Nelson Auto is a public figure, federal law requires that its Amended Complaint plead sufficient facts to support a plausible finding of actual malice. See, e.g., Biro v. Conde Nast, 807

-4-

F.3d 541, 544-46 (2d Cir. 2015), cert. denied, 136 S. Ct. 2015 (2016). If it is a private individual rather than a public figure for these purposes, then Minnesota law provides the standard of defamation liability; "so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual." Gertz v. Robert Welch, Inc., 418 U.S. 323, 347 (1974).

In Gertz, the Supreme Court noted that the public figure category is broader than persons who by reason of pervasive fame and notoriety become public figures for all purposes. "More commonly, an individual voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." Id. at 351. Whether Nelson Auto is a limited purpose public figure regarding the KARE 11 story is an issue of both federal and Minnesota law. As a matter of federal First Amendment law, the public figure question is given "a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy giving rise to the defamation." Id. at 352.

The Supreme Court has not addressed whether the "private individual" category can include a for-profit corporation, depending upon its participation in the particular controversy giving rise to the alleged defamation.[1] In Lundell Manufacturing Co. v. American Broadcasting Cos., we reinstated the jury verdict in favor of a corporate plaintiff defamed by a false news report that its garbage recycling

---

[1]In affirming reversal of the district court's finding of actual malice in Bose Corp. v. Consumers Union of U.S., Inc., the Supreme Court noted that the defamed corporate plaintiff "did not contest the conclusion that it was a public figure, or the applicability of the New York Times standard." 466 U.S. 485, 492 (1984). In Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc., "[n]either the parties nor the courts below have suggested that [the corporate defamation plaintiff] should be required to show actual malice to obtain a judgment and actual compensatory damages." 472 U.S. 749, 781 (1985) (Brennan, J., dissenting).

-5-

machine "does not work." 8 F.3d 351, 360, 364 (8th Cir. 1996), cert. denied, 520 U.S. 1186 (1997). We rejected the media defendant's argument that New York Times requires proof of actual malice -- plaintiff did not inject itself into the county's garbage disposal public controversy and therefore "Lundell's status mirrors that" of the private individual plaintiff in Hutchinson v. Proxmire, 443 U.S. 111 (1979). Similarly, the broad argument that all corporations should be regarded as public figures was rejected in Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 589-90 (1st Cir. 1980), a case cited favorably on another issue in Chafoulias v. Peterson, 668 N.W.2d 642, 652 (Minn. 2003).

The Minnesota Supreme Court addressed the corporate public figure issue in Jadwin v. Minneapolis Star & Tribune Co., 367 N.W.2d 476 (Minn. 1985), a case in which an investment adviser and his incorporated bond fund alleged they had been libeled in an article published in the defendant newspaper's business-financial section. The Court held that Jadwin, like the individual plaintiff in Hutchinson, was not a public figure under Gertz; applying Minnesota law, it held that he "may recover actual damages for a defamatory publication upon proof that the defendant knew or in the exercise of reasonable care should have known that the defamatory statement was false." Id. at 486, 491. However, regarding the separate defamation claim by the incorporated bond fund, the Court concluded:

> We hold, therefore, that corporate plaintiffs in defamation actions must prove actual malice by media defendants when the defendants establish that the defamatory material concerns matters of legitimate public interest in the geographic area in which the defamatory material is published, either because of the nature of the business conducted or because the public has an especially strong interest in the investigation or disclosure of the commercial information at issue. Id. at 487-88.

In Northwest Airlines, Inc. v. Astraea Aviation Services, Inc., 111 F.3d 1386, 1393 (8th Cir. 1997), we broadly declared: "Minnesota law considers a corporation a public figure and requires it to show that a statement was made with actual malice to establish a defamation claim.  See Jadwin v. Minneapolis Star & Tribune Co., 367 N.W.2d 476, 487 (Minn. 1985) (malice standard applies to heavily regulated corporation in securities industry)."  In Porous Media Corp. v. Pall Corp., 173 F.3d 1109, 1116 (8th Cir. 1999), a libel action between competitors, we quoted that sentence in Northwest Airlines but replaced the parenthetical limiting the rule to heavily regulated industries with the statement that the libel plaintiff "is regulated by Minnesota . . . authorities."  We held that the corporate plaintiff was a limited purpose public figure under Minnesota law as interpreted in Northwest Airlines but was *not* a limited purpose public figure under the First Amendment as interpreted in Gertz and in Lundell.  Id. at 1119-20.

As the Minnesota Supreme Court noted in Jadwin, 367 N.W.2d at 488, 490, and as Gertz makes clear, Minnesota is free to categorize corporations as public figures that must prove actual malice even if federal law does not.  We have some doubt whether the Minnesota Supreme Court would apply Porous Media's categorical approach to the public figure question when the allegedly defamed corporate plaintiff is a small business located hundreds of miles from the metropolitan area where defamatory statements are published.  Minnesota law would apparently apply a more restrictive definition of limited purpose public figure if the business were operated as a sole proprietorship.  See Chafoulias, 668 N.W.2d at 651, citing Gertz, 418 U.S. at 352.  However, unless the Minnesota Supreme Court revisits the issue, our interpretation of Minnesota law in Porous Media will remain controlling precedent in federal defamation cases based upon diversity jurisdiction.

In this case, Nelson Auto, a corporate plaintiff, alleges that KARE 11 published defamatory false statements in a news story that "concern[ed] matters of legitimate

public interest in the geographic area in which the defamatory material is published," Jadwin, 367 N.W.2d at 488, namely, criminal charges arising out of an investigation into whether Nelson Auto had overcharged Minnesota police departments using public monies to purchase police vehicles. Cf. Harlow v. State Dep't of Human Servs., 883 N.W.2d 561, 572 (Minn. 2016). Thus, the district court did not err in applying Jadwin, as construed by this court in Northwest Airlines and Porous Media, to conclude that Nelson Auto is a public figure as a matter of Minnesota law.

### III. The Actual Malice Issue

Because Nelson Auto is a limited purpose public figure under Minnesota law, its Amended Complaint must plausibly allege that one or more of the allegedly false statements was made with actual malice. See Porous Media, 173 F.3d at 1116. Actual malice "may be alleged generally," Fed. R. Civ. P. 9(b), but "to make out a plausible malice claim, a plaintiff must still lay out enough facts from which malice might reasonably be inferred." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 58 (1st Cir. 2012). "[E]very circuit that has considered the matter has applied the Iqbal/Twombly standard and held that a defamation suit may be dismissed for failure to state a claim where the plaintiff has not pled facts sufficient to give rise to a reasonable inference of actual malice." Michel v. NYP Holdings, Inc., 816 F.3d 686, 702 (11th Cir. 2016) (collecting cases).

Applying this standard, for Nelson Auto's defamation claim to be plausible, the Amended Complaint must allege "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" that KARE 11 published one or more statements with actual malice, that is, knowing they were false or with reckless disregard for whether they were false or not. Twombly, 550 U.S. at 556. This standard does not impose a probability requirement at the pleading stage. "[A] well-pleaded complaint

-8-

may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Id. (quotation omitted).

For convenience, we reproduce the relevant factual allegations in the Amended Complaint in the Appendix to this opinion. Looking first at KARE 11's initial website story and Facebook post on July 24, 2017, we agree with the district court that no plausible inference of actual malice can be inferred from the opening statement that "[a] state vendor is now facing criminal swindling charges . . . ." Although most readers would no doubt construe "vendor" as meaning the entity that sold the cars, Nelson Auto, the word could also logically refer to the employee in charge of the sale transactions, Fleet Manager Worner, and the following segment of the Facebook post expressly stated that the Otter Tail County indictment charged Worner with theft by swindle. Failure to recognize a mistake or ambiguity and its potential consequences is not evidence of a reckless disregard for the truth. See St. Amant v. Thompson, 390 U.S. 727, 733 (1968). In addition, when Nelson Auto complained that it had not been criminally charged, KARE 11 promptly corrected the mistake on its website. "[R]eadiness to print a retraction weighs against 'malice.'" Zerangue v. TSP Newspapers, Inc., 814 F.2d 1066, 1071 (5th Cir. 1987). KARE 11 did not delete or correct the Facebook post, leaving in the public domain a damaging statement it had acknowledged was false. But the Amended Complaint did not allege facts inferring this was anything but a mistake by KARE 11.

The allegation that KARE 11 published another story on its website in November 2017 containing a hyperlink to the uncorrected July 24 website story, rather than to the corrected version, requires a closer look. "[O]nce the publisher knows that the story is erroneous . . . the argument for weighting the scales on the side of [its] first amendment interests becomes less compelling." Id. at 1072 (reversing the grant of summary judgment dismissing a defamation claim based on defendant's post-retraction republication). However, the Amended Complaint is

devoid of allegations from which it can reasonably be inferred that the false statement was republished with reckless disregard for the truth. The subject of the November story is not identified, nor is it alleged that the false statement in the hyperlink was relevant to the new story. Nor is it plausibly alleged that the republication reflected personal or institutional bias against Nelson Auto. See <u>Palin v. New York Times Co.</u>, 940 F.3d 804, 814 (2d Cir. 2019) (reversing dismissal of a defamation complaint for failure to plausibly allege actual malice). Given the absence of facts from which actual malice might reasonably be inferred, we agree with the district court that these allegations "show nothing more than oversight on KARE 11's part, which does not constitute actual malice."

For the foregoing reasons, the judgment of the district court is affirmed.

**Appendix**

The relevant allegations in the Amended Complaint regarding actual malice:

> 10.  On or around July 24, 2017, KARE 11 published a story to its website with a headline reading "KARE 11 Investigates: Double-billing the badge, Criminal charges filed against state vendor[.]" The publication went on to say, falsely, "A state vendor is now facing criminal swindling charges[.]" The state vendor referenced in the story was Nelson Auto Center, Inc.

> 12. KARE 11's investigation included extensive information related to the criminal charges that would eventually be brought against the Nelson Auto employee responsible for the over-billing issues and KARE 11 was aware that no criminal charges were being considered against Laurel Nelson, Brent Nelson, or Nelson Auto.

> 13. Both the July 2017 statements . . . were published on the KARE 11 website where the stories were viewed by the general public. Both

-10-

statements were completely false and defamatory because Nelson Auto Center, Inc. has never been charged with a crime.

14. Through its investigation, KARE 11 had knowledge that the defamatory statements detailed above were false, but KARE 11 recklessly disregarded the truth and published the defamatory statements anyway.

15. On or about July 28, 2017, Brent and Laurel Nelson sent correspondence to KARE 11 informing KARE 11 that its published story was false because it claimed Nelson Auto Center, Inc. was being charged criminally. KARE 11 responded by correcting the story to instead state that it was a *former employee* of Nelson Auto Center, Inc. who was being charged criminally. KARE 11 ultimately admitted to plaintiff that "the wording of the initial version of the hyperlink was incorrect."

16. Even though KARE 11 corrected the story on its website, KARE 11 never deleted its July 2017 Facebook post . . . as of the drafting of this Complaint, the post can still be viewed on Facebook.

17. Having been notified that the story was false, and having acknowledged the inaccuracy of the statements by agreeing to correct the story on its website, KARE 11 should have been aware that it was obligated to correct the story in all of its media platforms, yet KARE 11 once again showed reckless disregard for the truth by allowing the false and defamatory story to continue to be accessible on Facebook and continue to circulate on that platform.

18. An early November 2017 story published by KARE 11 on its website contained a reference to KARE 11's July 24 story, again defaming Plaintiff. The false statement stated: RELATED: Charges filed (http://www.kare11.com/news/investigations/kare-11-investigates-criminal-charges-filed-against-state-vendor/459264740). The text above contained a link to KARE 11's story stating that criminal charges were filed against Nelson Auto, despite the fact it had previously

-11-

acknowledged that this version of the story was false and had replaced it with a story identifying the former employee who was facing criminal charges.

———————————————